Ready? Okay. Good morning, Your Honor. May it please the Court, Max Stern of Duane Morris for Appellant, Indian Harbor Insurance Company. I'd like to save five minutes of my time for rebuttal. Wait. Watch your clock, please. I will. Thank you, Your Honor. The priority issue between the two insurance companies in this case can be accurately described as the following. We have two liability insurance companies, both of which have duties to defend their common insured, and the number of three underlying actions. Kukuula Development Company, I'll refer to them as KDC, as we did in the briefs. Both those two policies have relevant indemnity coverage. There can't be any dispute about that. One of those two policies has primary other insurance wording, and one of those policies has excess other insurance wording. That's the Indian Harbor policy. So under the terms of the contracts, put inside all the fights that the parties have had, the primary, just reading those two phrases, you can see that the primary should bear all defense and indemnity, and the excess should not have to pay anything until the primary policy has been exhausted. That's the Gemini policy. Moreover, Indian Harbor also points out that it had an indemnity self-insured retention, and until that indemnity self-insured retention was exhausted by payments by KDC, it was an excess policy. And so again, it had no obligation to pay defense or, excuse me, indemnity, because that's an indemnity-only issue, the retention. So under the New York law that controls the obligations between these parties, it's very well established for decades that the policy with the excess clause has no defense or indemnity obligations on this set of facts, and that's consistent with the most recent pronouncements of the Second Circuit, the IBM case, and the very recent pronouncement of the New York Court of Appeals. Just two leading-up questions. One is that I gather there is still some dispute about whether New York or Hawaii law applies, and I understand you think that they've weighed this argument. I'm not so sure they have, so I'd like to know what difference it makes. Well, I would say the difference between the two states, I would say there's no difference when it comes to the issue of when there's overlapping indemnity coverage or relevant overlapping indemnity coverage, but based on the most recent Nautilus decision that was issued after the underlying action was briefed, I would say that Hawaii law doesn't view the mere existence of two policies having defense coverage as being sufficient to be the same risk, that the same risk has to be based on indemnity coverage. But it's very clear under New York law that overlapping, the fact that two policies have an obligation to defend the same action. But Hawaii case law didn't say otherwise either. I mean, in other words, my understanding of the Nautilus opinion is that it says that the insured can go to either one of them for the defense. But it says several times we're not saying what happens between them. I guess that's correct, Your Honor. I guess I was focusing on a part of the third certified question that said that you had to, that both parties had a duty to defend in the first instance. But it is correct that it says in the end you always do look to the other insurance clauses and apply them. I guess I'd just say I don't know what the answer to that question is under Hawaii law because I don't believe there's any precedent for us to determine whether an overlapping defense obligation alone, which isn't the case we have before us, but if it was only an overlapping defense obligation, like we have in one of the cases in the briefs, I think it's the Fireman's Fund v. Federal case out of New York, where their only overlap was defense, and they said that was good enough. Here we have a substantial overlap with respect to indemnity. Indian Harbor submits its 100% for all relevant indemnity, which is what was paid in the settlements, because the court found that we both had that and neither of us challenged that ruling. Moreover, and it's clear that there is some overlap of indemnity because for the red dirt, the staining of red dirt and the corrosive properties of the red dirt that is the cause of virtually all the damages in this action, and we've offered evidence from the record to show that, both parties, Gemini and Indian Harbor, absolutely had indemnity coverage for that. What is your understanding of what the district court ruled about this? At one point she seemed to have said that the other policy didn't cover pollution, so it wasn't the same risk, and she later realized that was an overstatement. So I couldn't quite tell which was the ruling that was governing on the defense issue. Well, I have to admit that I was confused and I expected the judge to reconsider her ruling, which is why we brought the issue up so many times. We weren't there just to annoy the underlying judge. But when she initially made her decision, she characterized the two policies, I think, in a published decision as mirror images, saying one covered pollution and one doesn't. And that just wasn't correct. And so when that came out to be correct and when she came to understand that to be correct, the response that kept on coming back in the orders was, well, there's not a basis for reconsideration at this point in time. So we knew that whatever happened, we would have to end up before this court on that issue, and so that's why the parties utilized the procedure they did to stipulate to judgment, preserving just two issues for appeal. Now, going back to something that Your Honor just said with respect to whether they did preserve any issues other than those two issues for appeal, we would say that that is... Yes, but this is the problem. They didn't appeal. You appealed. And I don't know why they limited their defenses. I don't... It's not a defense to say that you... Sure is. It's a defense to say they applied the wrong law. Our position would be there's an order from the court that says that New York law applies. And you have an obligation under slavery... They wouldn't have an obligation to appeal it because it wouldn't have to be a cross-appeal. So they have no appeal obligation with regard to that. But we would submit that it's different than the standards of appealability and the scope of issues on appeal normally when you've had a consent to an order and you've had a consent to a judgment. And I think that the case law is pretty clear on this. It wasn't even clear. I mean, I found the whole procedural thing confusing. It wasn't clear to me that this was a consent or a settlement as such. It seemed to be an agreement that the order, the decisions that had already been made would be incorporated in a final judgment rather than in the agreement to the substance of anything. I say that there are parts of that stipulation and order that are clear, that the parties both vigorously opposed the finding by the district court that they hadn't done the obligations. Mr. Gallagher and I argued those issues very strongly. We agreed that, and it says, that we would not challenge that issue. I specifically said that, but with regard to everything else, I thought it was just an agreement that, all right, we're going to wrap this case up. Everything that's been decided is going to be incorporated into a final judgment. And here we go. Now, I understand that there was also a reservation on the appeal, but I don't know even why there had to be. I would say, well, we felt there had to be under-slaving and the authority like Doris that it relied on because the case law is so strong that if you aren't absolutely specific about reserving a right, and I would say maybe the flip side of what Your Honor just said in that we agreed to a number of things. We had a number of claims out there. We agreed that all those claims had been ruled against us. Everything else was adjudicated with prejudice against us other than what was explicitly adjudicated, or that we couldn't appeal any of those issues except what had been preserved for appeal. Even without getting into that, they didn't appeal, and they didn't have to appeal in order to raise the question of which law applies. I'd say it's not a question of whether they appealed it. It's a question of whether they're bound by the order. So it's a consent to an order. And under-slaving, if you're consent to an order, and under the law that it relies on, you're bound by that. But we don't need that. Let me ask you this, Counsel. Is there anything in the record that tells us how much was spent on the Gemini policy versus the Indian Harbor policy? How much was paid for it in terms of premiums? Correct. Yes, I believe it is in the record. I think that the front pages of the policies say that. Off the top of my head, I remember it from the action because it was such a big issue in our minds that the Gemini policy was a $2 million policy, and I believe they paid $1.8 million for it. So it was a policy that was known to have high risk in this kind of construction project. I don't remember offhand the premium for the Indian Harbor policy. I'm trying to flip back to see if that's... It's $177,303. There it is. Thank you, Your Honor. And so my question is, what do we make of that? I think we make of that the fact that Gemini knew it was writing a primary policy. So for those case law that look at the premium differential, there's often a very much higher policy. A primary CGL policy knows it is the front-line risk in U.S. liability insurance. That's all there is to it. It's the front-line risk. There's lots of other policies like specialty policies, we might call them, D&O policies, E&O policies, professional policies, pollution policies, that are known to be a secondary level of primary coverage if they don't get out there. They almost always carry these excess other insurance clauses because it's known they're going to come in second. They're not taking on the breadth of risk, and they're also not taking on the front-line risk. So both of those factors go into the underwriting of those. Can we talk about the same risk as it pertains to the pollution exclusion? Yes. I do believe it points to the district court said that they both covered the same risk because they both covered pollution, but there was a slight pollution exclusion in the Gemini policy. The Gemini pollution exclusion, because the first part of it says we exclude coverage for a liability arising out of pollutants, it looks like it's a pollution exclusion, but it only has broad application. But it does only apply in five situations. One of those with respect to operations is subpart V, and that's what matters here, contractor operations. So when a contractor goes to a site and spreads native materials out, whether they're contaminated or not, that's not within the scope of their pollution exclusion. And the record has strong support that Gemini knew that from the beginning. We have at ER 786, Gemini's adjuster explaining that Gemini had no reason to think otherwise, that the red dirt that was the core of this action had been brought onto the site. Moreover, we have evidence in the record at ER 779 that the red dirt that was the issue here... That was the subject of the complaints. That was the core subject of the complaints in the complaints and all the proof that followed. That was what was going on. Any evidence that anything was brought onto the property that created the pollution damage? No. There's no evidence of things brought onto the property causing actual damages. There is some allegations that were made that some of the shredders may have had some bodily injury from... Allocated by the diesel oil fumes, which would have been equipment brought onto the site. But they never converted that into monetary proof. And when the district court heard the indemnity summary judgment motions, Gemini didn't respond and say, this might be 95% red dirt, but it's 5% diesel. It actually didn't offer any evidence of that type. So that issue, that some of this should have been allocated to diesel, wasn't preserved for appeal. There wasn't the evidence to make that argument. Could you address the indemnity part? The indemnity issue? Well, as I was just saying, the evidence, there's two aspects. One, we both agreed that we have, that both policies have full indemnity coverage. Overlap in risk, but it's not the same. And that some of the, that it's at least... There was a settlement here, as I understand it. Every one of those three actions was settled. And some of, we don't know whether the, what part of what's in there is the covered pollution and what's the uncovered pollution with regard to the other policy. Well, what we knew is the district court ruled against us on that settlement, both of our parties, and said, you have full coverage for this shred of settlement that the issue of the indemnity. You have 100%. I didn't think you said full coverage. I thought you said that each of you are, that you have coverage from each of them. That's not, I mean, that's not what the motion that was before her. It was to say that we had coverage for the entirety of the settlement. It put out the full settlement amount, and that was the ruling. She said we had coverage. Where is that in her settlement? I looked for it, but I saw a quote that said that. The stipulated order. I mean, in Aurora, where is it? I'm going to turn into it, Your Honor. Well, she adopts the stipulation between the parties, and I think that on ER 12, it says, Indian Harbor at .2, so it's about a third of the way down the page. Indian Harbor and Gemini both had duties to indemnify KDC for the entirety of the underlying actions, the settlements. Mr. Gallagher and I stipulated to that. We signed the stipulation to that effect. That's not an issue before us on appeal. We both said that that was the way we were going to go into this. We were going to go into an appeal just looking at the other insurance issues. So unless there's other questions right now, I'd like to reserve the time. Therefore, your conclusion is that you were excess as to that. We were excess as to them as to indemnity because we both had full coverage for that Shredder settlement. We stipulated to that, and we've got another insurance clause. So our excess other insurance clause should make us excess under either Hawaii or New York law in that situation. We clearly are entitled to the reimbursement of the $262,500 we paid. All right, you may reserve some time. Yes, thank you. May it please the Court. To get straight to the point, that is not what the Court ordered nor what was stipulated to with respect to the entirety of all the indemnity, nor would that have even met the facts. Even if it isn't what she ordered, is it what you stipulated to? Your Honor, what we stipulated to was that KDC was indemnified entirely. The Court's orders from which that came from are at the record at page 28 and 29. And they were, as Your Honor just mentioned, that Indiana Harbor has a duty to indemnify KDC and that Gemini has a duty to indemnify KDC. There are claims that involve pesticides and fumes, clearly primary coverage under the pollution policy. There were claims for broken water mains, clearly primary coverage under the CGL policy. The red dirt was an issue, and I could see the Court found that the red dirt, having not been brought onto the premises, was not a pollution issue. But at the time of settlement, the Court's orders lent to the very real or potential possibility of a verdict at the close of the evidence, for example, that would hold maybe $100,000 for the pesticide, maybe $25,000 for the fumes, maybe another $100,000 for the red dirt, and another $25,000 for the broken water mains. So what we have, we don't have a same risk necessarily. Can I ask a question? Yes, Your Honor. Is this discussion we're having now with regard to the indemnity or the defense or both? Both, Your Honor. It would apply as to both because once there was a possibility that Indian Harbor's policy had a primary duty to defend, it had a duty to defend, or a possibility to have coverage. That's not illogical, but it seems not to be New York law. I beg your pardon, Your Honor? I say that's not illogical, but it is not New York law. New York law seems to regard the risk as being the risk of defense. I understand that, Your Honor. And there is the choice of law issue. But do you, let's start. But on New York law, I think we prevail. Do you agree that if we apply New York law, that you are primary in their excess as to the defense? No, Your Honor. Why? Because there is no same risk here. There's no necessarily finding of the same risk, or even overlapping. Why not? Because there's a possibility, a potential, that there is not an overlapping risk. The Fieldston case... But the New York case law seems to clearly say that where each of you would have had a duty to defend because there was a possibility that there would be coverage, then you then look at the cost of defense as the risk, and the primary one goes first. To approach it in that fashion, Your Honor, we disagree with that approach. I know you disagree with it, and I'm saying what you're saying is not illogical, but it's not New York law. Understood, Your Honor. You just told me you didn't understand. You said that wasn't true under New York law. I had misunderstood Your Honor's earlier question. I apologize. On that point, to approach this from a standpoint of whether there are two policies that each possibly have coverage, and then to say that we're going to disregard that, and then create a primary excess after one has analyzed whether each has a duty to defend under a possibility, turns that possibility of coverage analysis on its ear. But do you disagree that that's exactly what Fieldston held? That is what Fieldston held. So if you're under New York law, you lose on that point? On the duty to defend as a common risk, yes. So, counsel, you're not saying that New York law doesn't apply now, right? We are saying that, Your Honor. I don't understand how you can say that when, in your stipulation for final judgment on prior rulings, you adopted the February 29, 2012, ruling where the court said New York law applies, and you didn't reserve a right to appeal from that. Your Honor, the final judgment portion of that, to the extent that it was a final judgment, it ruled in our favor. It was not something that I wanted to appeal. It was not a judgment, but you could have, like Indian Harbor did, you could have said, yeah, we win, but we disagree with the ruling that said New York law applies, that we win regardless of whether New York law applies, because Hawaii law is even more favorable or whatever other law you might want to apply here. We could have, but I don't think it's required under the law, Your Honor. Well, I think you can't stipulate to a judgment and come back and say, well, no, now we're disagreeing with that. I mean, I think you're kind of stuck with that. But the judgment was in our favor. No, the ultimate judgment, of course, but you could have said we win regardless of which law applies, that we disagree that New York law applies and we win regardless of which law applies, because the only two laws, as I understand, would be New York or Hawaii. Your Honor, I think the analysis is that on their appeal, the court has to look at the decision of the court. It's a little sandbagging to me to agree to a final judgment so that the issues that are really the nub of this thing can be appealed and then come back later and say, oh, but we didn't really mean to agree to the order that's in there that we agreed to. I think, Your Honor, in the big picture, the conflict of laws issues really became more acute when the Nautilus decision came out, which, of course, was after all of this. The Nautilus decision, though, just really is to the side of all this, because as I read Nautilus, it is saying that each owed a duty to defend to the insured, and the insured could go to either of them or both of them and get money for the defense. And it said several different times, we're not saying, as between them, what happens after the fact. It just doesn't deal with this. I agree, Your Honor. And so what happened, and Nautilus also kind of speaks to it a little bit, what Nautilus also says is that the claim that someone is excess, that one party is excess to other insurance, and this is from the Nautilus case, often cannot be determined until after the conclusion of the litigation or sometimes at all in the event the case settles. Right, which is what happened here. Exactly, Your Honor. Therefore, don't you end up in the same place? Well, to a extent, yes. But also, don't you end up in the same place for a different reason, which is there's a whole predecessor question about Hawaii law, which you haven't addressed, which is that there was a choice of law question here, and question A is would Hawaii enforce the choice of law provision, right? And it appears it probably would. So would it ever get to Nautilus? Well, the court certainly did decide to enforce the choice of law question. We don't think that that was proper. We argued that at the time that it wasn't proper. But isn't Hawaii quite forgiving when there is a choice of law provision as opposed to when there isn't? Not on insurance matters, Your Honor. The Ingalls case that we provided the court, and then it's also in the Mickelson case, that they would enforce the choice of law provision unless application of the law of the chosen state would be contrary to a fundamental policy of a state which has materially greater interest than the chosen state. Here, at best, what we have on this is nothing, because Nautilus didn't decide it, so it can't be. It's contrary to the public policy of Hawaii when there actually is no law on this in Hawaii. Well, but there was strong public policy with respect to applying Hawaii law to interpret out-of-state insurance policies that Hawaii law would apply, either both for the benefit of Kukuiula, who had these policies, or to enforce that the insurance carriers are interpreting their policies consistent with the Hawaii law where they sell them to Hawaii insurers, or to Mr. Schroeder, who was the claimant here. So there's a strong public policy towards applying their own law with regard to insurance policy interpretations. The court overlooked that, we believe, in its decision. You raised the indemnity question. You say it doesn't matter which law applies on indemnities. Let's talk about indemnities. Sure. I think, again, because there had not been yet any kind of decision on how one parcels out the damages here, under the indemnity, the settlement was made without that decision. Certainly as to the Nautilus case, without some sort of decision or framework to do an allocation between insurers, enforcing the provisions of some form of allocation by way of saying primary excess, they can't do. In fact, the stipulation also, in our stipulation, had agreed that there was no basis, that based on the facts or differences in the scope of coverage, there's no basis to reallocate the settlement in the Schroeder action. That was part of the stipulation. That was part of what Gemini stipulated, too, was that there was no basis to reallocate. What they're doing is skipping the reallocation. If there's no basis, then it has to be taken that the risks covered by both policies are basically the same. If you're not going to allocate them, then what are you going to do? But there's no factual determination that the risks covered both, that the policies covered both risks, or the same risks. Wait a second. So for the duty to defend, though, don't you look at the underlying complaint itself? You don't look at a factual determination, right? Certainly. Were the policy limits plus KDS's self-retention exceeded, assuming Indian Harbor's excess, so that it would reach into Indian Harbor's policy on the cost of defense? I believe it was, Your Honor, on the cost of defense. Believe, or was it? It was. It was. Okay. So is that what you were awarded, an allocation of the cost of defense? No. The allocation of the cost of defense, Your Honor, was done on a pro rata basis between the insurers. Yeah, but do you agree that if Indian Harbor's an excess policy with respect to the pollution coverage that they have no duty to defend? As to pollution claims, they still do, because they are primary as to pollution claims that are not covered under the Gemini policy. Right. But then for that, we look at the underlying complaint, right? Yes. Okay. Well, if you look at the underlying complaint, it seems that every single basis for injury had to do with this red dirt pollution that everyone knew was going to end up causing all this damage anyway. There were also allegations of toxic fumes. There were allegations of fumes due to diesel fuel. There were allegations of pesticides. Both the pesticides and the fumes would be covered primarily under the Indian Harbor pollution policy and excluded under the Gemini policy. Can we circle back to the fact that the stipulation does say Indian Harbor and Gemini both had duties to indemnify KDC for the entirety of the underlying actions? So why doesn't that just settle it? Your Honor, as I understood that clause, when it was put in the stipulation, I understood that to be a reference that KDC was indemnified entirely, so that KDC would not be a contributor. They had a duty to indemnify them entirely. I think also, Your Honor, if one looks back to the underlying orders from which that came, those orders clearly say each owe a duty to indemnify. Maybe, but that's not what the stipulation says. Your Honor, I read that and understood that at the time of the stipulation to mean that KDC was entirely indemnified. Not that collectively, excuse me, that collectively they were entirely indemnified. Not that each of us owed a separate entirety duty, and I would never have thought that because that was never part of the court's orders.  Well, it would certainly be the ordinary way to read the sentence. If you say they both had duties to indemnify them for the entirety, it doesn't say they together had duties to indemnify them. It said they both had duties. Your Honor, all I can tell you is that came from two orders that are not, don't read it that way, and I did not read it that way at the time I signed it. I think to, I mean, we're talking about sandbagging or whatever, but to say that this now becomes the way the court had ruled or, you know. Take it your way. Certainly. And you still have a non-divisible settlement as to which one can't tell at least, at least one can't tell whether some of the risk covered was the risk that you had a duty for indemnity, but there was a finding that you had some duties to indemnify. So there was some overlapping risk. If it can't be determined what, and there's a stipulation that it can't be allocated, so therefore where do you get the conclusion that you're not primary with regard to that settlement when there's no way to know, to exclude the part of the pollution coverage that you are at risk for? Well, that's my point, Your Honor. The case never got to that kind of a decision. Well, we're here now. How do we do it? I mean, there's no point. There's a summary judgment. Factually, a jury would need to see. Let me contrast. So you're just saying there shouldn't have been summary judgment on it because? I think there's still issues of fact as to which of the damage was from pesticide, which of the damage was from dirt. I don't understand how you can even be arguing that now when you stipulate it to a final judgment. If that was, in fact, your position, why would you stipulate to a final judgment and not reserve that factual issue? I mean, you wouldn't even be in front of us with a factual issue. I think what happened, Your Honor, procedurally, was we settled that factual issue with the settlement of the contribution from my client, contribution from Indian Harbor, contribution from underwriters. So those factual issues were all settled. The legal issue that Indian Harbor wanted to raise was that they should become excess over all of this. My point is, is that under the Nautilus-Lexington decision that talks about sometimes the operation of an other insurance clause may never be resolved where there's a settlement, is what we have here. Can't say may never be resolved. They said you may not be able to tell. They didn't say what happens when you can't tell. It says cannot be determined until the conclusion of the litigation or sometimes at all in the event the case settles. They didn't say at that point what? They didn't say at that point that nobody's primary and nobody's excess. They haven't established that they are excess to any part of the settlement that was paid. Counsel, you've exceeded your time. Thank you. Thank you, Your Honor. So I'd like to start out by addressing a couple points of what Mr. Gallagher said, which are just contrary to the facts of the record. In response to Judge Wardlaw's question, Mr. Gallagher said that the total of the amount paid by Gemini had it had to bear it without any contribution from Indian Harbor would exceed the limits. That's not true. There's nothing in the record that says that. It was a $2 million policy. They had contributions from a third insurer, Lloyds of London. It's not in the record, and it's not correct from my understanding of the numbers. After all, the only amount that's being sought from Indian Harbor is $241,000, and $262,000 Indian Harbor is seeking from it. There's no evidence that this $500,000 swing that we're asking the court to make would exceed the limits of the policy. I don't think that's right, and it's definitely not in the record, and it can't be brought at this time. Secondly, with respect to the Ingalls case, the argument that I want to point to, I don't think it's an applicable case because of the fundamental policy issue that Judge Berzon raised. Certainly nowhere below was restatement 187 2B exception to the enforcement of choice of law under 187 ever raised. So that's a new issue on appeal, and it shouldn't be raised now. This court has many times addressed that exception, really in the context of cases arising out of California as opposed to Hawaii, as far as I could tell on one night getting the case yesterday. If the court would like, I can identify a number of cases where this court has said that that fundamental policy exception is a very high threshold. It has to be satisfied by a state regulatory pronouncement, either in constitution or statute, or by unconscionability of contract. And so I have those cases, and I can submit them. I don't know if it makes sense to put them in the record now. All right. We'll think about it. If we need them, we'll make an order. All right. Thank you, counsel, for your time. Okay. Thank you, Your Honor. All right. Gemini Insurance Company v. Indian Harbor Insurance Company is submitted.
judges: Wardlaw, Berzon, Owens